ANNA E. TALCOTT and Others, Respondents, *v.* THE. CITY OF BUFFALO and JOSEPH E. BARNARD, as. Comptroller of the City of Buffalo, WILLIAM SUM— MERS and Others, Appellants.

*Municipal corporation — substitution of electric light for gas light — petition of a majority of the property owners in opposition thereto — violation of the rules of the common council in passing the resolution therefor — right to prevent the waste of public funds.*

In an action brought to restrain the authorities of the city of Buffalo from substituting in Bouck avenue, in that city, electric street lighting for that of gas, it appeared that under the ordinances of the common council of that city, in the year 1875, the Buffalo Gas-Light Company had placed gas lamps and mains and. service pipes in a portion of the avenue, which it was proposed to light by electricity, and that the expense thereof was paid by the city, but was received back by it from local assessments upon the property of persons benefited thereby; that a majority of the taxpayers along the street had presented a petition to the common council in opposition to such change of light, and it was alleged that the resolution providing for this change of light was passed in violation of the rules passed by the common council for its own guidance.

*Held,* that, in the absence of a provision to that effect in the city charter, the common council was not required to act in the matter of street lighting in accordance with the request of a majority of the taxpayers.

That there was no law which prohibited the common council from suspending its own rules, and that any such suspension of the rules could not form the basis of a complaint from outside parties unless it was done for the purpose of deceit.

The complaint alleged that the construction of the poles for the electric lights would impair the value of the land along the avenue in question, including that owned by the plaintiffs; that the contract-price for lighting that avenue by electricity was "unreasonable, excessive and exorbitant, and largely in excess of the price at which said electricity could profitably be furnished to said city" for lighting said avenue; that the said price of $164.25 was fixed, pursuant to an agreement and combination of the persons and corporations, or alleged corporations, owning or having control of the different electric-light plants in said city of Buffalo, and was largely in excess of the value and of the cost of such light. The complaint also contained other allegations to the like effect.

Upon the hearing of the issues raised by a demurrer interposed to this complaint:

*Held,* that a case was presented which authorized the intervention of the court, under the provisions of chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887, the acts for the protection of taxpayers against the waste of public funds.

Appeal by the defendants, other than the United States Electric-Light and Power Company, from an interlocutory judgment, entered

in the office of the clerk of Erie county on the 22d day of November, 1889, upon a decision rendered at Special Term upon the trial of the issues of law raised by demurrers interposed to the plaintiff's complaint.

The judgment appealed from overruled the demurrers interposed by these defendants, with costs, but with leave to answer within twenty days upon payment of said costs. The action was brought under the taxpayers' acts to enjoin the substitution of electricity for gas in the lighting of Bouck avenue in the city of Buffalo.

*Frank C. Laughlin,* for the appellants.

*Norris Morey,* for the respondents.

MACOMBER, J. :

The appellants, other than the City of Buffalo and Barnard, the comptroller, are the aldermen constituting the common council of that city.

There seems to be no merit in that part of the demurrer alleging that the common council, by name, is a necessary party under chapter 519 of the Laws of 1870, which constitutes the charter of the city of Buffalo. We do not understand that the common council has any corporate existence, but is only a name to designate a body of aldermen of the city.

The grave question is, whether the facts alleged in the complaint constitute a cause of action against the defendants who have appealed.

The case is brought to restrain the authorities of the city of Buffalo from substituting electric street lighting for that of gas in Bouck avenue between Niagara street and Chapin Place. Under the ordinances of the common council of the city, the Buffalo Gas-Light Company, in the year 1875, placed in a portion of this avenue gas lamps and mains and service pipes, and the expenses thereof were borne by the city, but the same were received back by the city under local assessment upon the property of the persons benefited thereby. Extensions of these mains and increase of the lamps were made subsequently; so that, in 1885, this entire avenue between the points stated was sufficiently supplied with gas for the proper lighting of the street to the satisfaction of the city, and particularly of the residents along this avenue.

The complaint further shows, at some length, that an alleged majority petition of these inhabitants was presented to the common council for the exchange of this gas lighting to electric lighting, and a resolution granting the prayer of the petition was passed by that body on May 7, 1888. Subsequently an opposing petition against the electric light, and in favor of gas lighting, was presented to the common council, which, it is said, contained a majority of the names of the taxpayers, both in number of persons and in value of property; but that the same was disregarded by the aldermen.

There are other allegations in the complaint to the effect that the resolution, as originally passed, and as subsequently adhered to, notwithstanding the veto thereof by the mayor, was passed in violation of the rules established by the common council for its guidance. In the charter of the city of Buffalo, however, we do not find any provision which requires the common council to act in the matter of street lighting in accordance with the request of the majority of the taxpayers; nor do we find therein any law which prohibits the council from suspending its own rules, which, like those of all other parliamentary bodies, are enacted for its own guidance, the suspension of which cannot form the basis of any complaint from outside parties, unless the same is resorted to for the purpose of deceit, of which there is no pretense in this case.

But there is a serious question presented by the complaint, going directly to the question of abuse or misuse of official authority by the common council, by which the corporate property and moneys are so improperly and improvidently expended as to constitute a waste of public funds, under chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887, entitled "An act for the protection of taxpayers." The present statute is aimed to prevent any illegal official act on the part of municipal officers, and to prevent waste or injury to property, funds or estate of a municipality, and to make good the loss if any such has happened. The most important addition to the original law is the last clause of the present statute, which is as follows: " The provisions of this act shall apply as well to those cases in which the body, board, officer, agent, commissioner or other person above named has not, as to those in which it or he has jurisdiction over the subject-matter of its action."

Beyond question, the common council of the city of Buffalo had, under its charter, full power and control over the lighting of the streets of that city. Under this amendment, however, the members of that body cannot prevent the interference of a court of equity upon the ground that, having jurisdiction of the subject-matter, their action has the protection accorded to legislative discretion, and, therefore, not reviewable by the courts. Some cases, not necessary now to be referred to, had, with greater or less distinctness, intimated the existence of such a rule under the act as it originally stood, and this amendment was doubtless supplied with a view of enabling the courts to interpose by injunction, where the contemplated action by the common council, though within its jurisdiction, was likely, through improvidence or carelessness, as well as through fraud and corruption, to result in the waste or injury to the funds of the municipality. It is no longer necessary for the taxpayer, in order to maintain his action, to allege and prove actual fraud or actual corruption on the part of the common council, or of any other municipal officer, as a basis of relief. The proof of such corruption and fraud, even where there exists a moral certainty of its existence, is a difficult matter to establish. This act, so passed for the protection of the taxpayer, should be liberally construed by the courts in order to make effective the effort of the legislature to check the evils of careless, improvident, reckless, fraudulent or corrupt action by the persons in charge of the administration of the affairs of municipal corporations. The language of Judge ALLEN, in the case of *Ayers* v. *Lawrence* (59 N. Y., 192), though given in a case arising under the Laws of 1872, is, in its generalization, applicable to the statute as it now stands, and it has frequently been made the subject of judicial approval.

If these demurrers were interposed for the purpose of presenting to the court the question whether it was competent for the common council to dispense with the lighting of the public streets by gas and make a substitution therefor of electricity, even at a material increase of expense, they fail of their purpose. Had answers, instead of demurrers, been interposed, and the plaintiffs been put to their proofs, doubtless many of the allegations contained in the complaint would have failed of substantiation, while others might probably be easily disproved by the defendants; but we can take no

judicial notice of the likelihood of such a result at the trial. All of the material allegations of fact are admitted by the demurrers. The sole question, therefore, is whether or not such facts are sufficient, when conclusively proved, to afford relief to the taxpayer.

The complaint alleges that the construction of the poles for electric lights would impair the value of the land along this street, including that owned by the plaintiffs; it further alleges that the contract-price, namely, $164.25 per light for lighting that avenue by electricity " is unreasonable, excessive and exorbitant, and largely in excess of the price at which said electricity could profitably be furnished to said city for lighting said street; that the said price of $164.25 is fixed pursuant to an agreement and combination of the persons and corporations or alleged corporations owning or having control of the different electric-light plants in said city of Buffalo, and is largely in excess of the value and of the cost of such light and of the price paid for lighting streets by electricity by other municipalities in the vicinity of Buffalo and in other parts of the State of New York and in other places in the United States; and that the cost of lighting Bouck avenue by electricity, as proposed and determined by the common council of said city as aforesaid, will greatly exceed the cost of lighting said street as heretofore by gas; that such proposed lighting of Bouck avenue by electricity will displace forty-nine lamps now used for lighting said street by gas, and that thereby the said city of Buffalo will lose the use and will substantially lose the value of said forty-nine lamps, posts and connections; that the said forty-nine lamps, posts and connections cost the city of Buffalo about the sum of $1,950; that the cost of lighting said Bouck avenue by electricity with twelve electric lights as proposed by the said resolution and determination of the common council will be $1,971 per annum, and the cost of lighting the same portion of Bouck avenue by gas at the price proposed by the gas-light companies, and accepted by the city aforesaid, amounts to only the sum of $1,071.63 per year, making an increased annual expense for lighting the said portion of Bouck avenue by electricity with said twelve electric lights of $899.37." There are other allegations to the effect that this avenue is now lighted by sixty lamps at an expense per year of twenty-seven dollars and eighty one cents per lamp; that such gas lighting is sufficient and economical and such

as is desired by a large majority of the people of Buffalo and of taxpayers owning lands upon this avenue; "that lighting by gas diffuses the light upon a street much more equally and uniformly than lighting by electricity and is better adapted to and furnishes a better and more satisfactory light for a residence street," which Bouck avenue is shown to be exclusively.

If all these allegations in the complaint were established as matters of fact, as they must be deemed to be under the demurrers and for the purposes of this appeal, the judgment to be pronounced by the court would be unmistakable. They present a case literally within the language of the act above referred to.

The interlocutory judgment appealed from should be affirmed, with costs.

DWIGHT, P. J., and CORLETT, J., concurred.

Interlocutory judgment affirmed, with costs.